TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00705-CV






Richard Williams d/b/a Rich's Fine Jewelry, Appellant



v.



Troy Dodson, Sr., Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF JEFFERSON COUNTY


NO. 77081, HONORABLE ALFRED S. GERSON, JUDGE PRESIDING 







 Appellee Troy Dodson ("Dodson") sued appellant Richard Williams d/b/a Rich's
Fine Jewelry ("Williams") for conversion and violation of the Deceptive Trade Practices Act. See
Tex. Bus. & Com. Code Ann. §§ 17.01-.854 (West 1987 & Supp. 1998) ("DTPA"). The trial
court ruled in Dodson's favor and awarded damages of $12,516.30. Williams appeals by three
points of error, arguing that: (1) the trial court applied the wrong measure of damages, (2) Dodson
did not produce legally or factually sufficient evidence of the actual damages awarded by the trial
court, and (3) Dodson was not entitled to prejudgment interest or additional awards under DTPA
section 17.50(b)(1). We will affirm the trial court's judgment.


BACKGROUND

 This case arose out of a dispute surrounding the sale of a bracelet by Williams. 
Dodson bought the bracelet in the late 1970s as a gift for his wife. The diamond and emerald
bracelet was part of a three-piece set that included a matching ring and pendant. By 1990, Mr.
and Mrs. Dodson had accumulated a substantial collection of jewelry, and Mrs. Dodson had
stopped wearing the diamond and emerald set. In 1993, the couple decided to sell the three pieces. 
Dodson took the jewelry set to Williams on November 30, 1993 for the purpose of having it sold.

 The parties dispute what happened at the jewelry store on November 30. According
to Dodson, he told Williams that he would like to sell the three pieces and asked what Williams
thought he could get for them. Williams estimated their worth at $2,000 to $3,000. Dodson
rejected the price because it was less than half of what he had paid for the jewelry some fifteen
years earlier. Dodson left the three pieces with Williams so that Williams could "clean them up"
and reappraise them. Williams gave Dodson a sales form as evidence that he was holding the
jewelry. The form states "Left on memo," describes the jewelry, and closes with "Sale for 2,000. 
To 3,000.00." Dodson asserts that the sales form gave Williams the authority only to reappraise,
not sell, the jewelry. According to Williams, Dodson specified $2,000 to $3,000 as the price
range within which he wanted Williams to sell the pieces, and the sales form was Dodson's
confirmation to Williams that the jewelry could be sold. Both parties' expert witnesses agreed that
the sales form indicated the pieces were to be sold for between $2,000 and $3,000. 

 Williams sold the bracelet on December 8, 1993 for $1,200. 

 A week or two later, the Dodsons returned to Williams's store. Williams informed
the couple that he had sold the bracelet. According to Dodson, he and his wife saw the bracelet
still on display in one of the showcases. The Dodsons left the store but returned a short time later. 
Upon reentering the store, they saw that the bracelet was no longer in the showcase. The Dodsons
demanded that Williams return it and the other pieces of jewelry. Williams denied that the
bracelet had been on display in the showcase and again stated he could not return it to the Dodsons
because it had already been sold. Williams eventually returned the ring and the pendant, along
with a check for the sales proceeds of the bracelet, less his 10% commission. The check and the
two pieces of jewelry were delivered to the Dodsons' attorney on January 19, 1994. (1)

 Dodson brought suit for the loss of his wife's bracelet, alleging conversion and
violation of the DTPA. After a bench trial, the trial court ruled in Dodson's favor. In findings
of fact and conclusions of law, the court found that Williams did not have the authority to sell the
bracelet, the intrinsic value of the diamond and emerald bracelet was $8,750, and its market value
was also $8,750. The trial court calculated Dodson's actual damages to be $8,750 and rendered
judgment for Dodson in the amount of $12,516.30, computed as follows:


 $8,750.00 Actual Damages

 $2,000.00 Additional Damages under DTPA § 17.50(b)(1)

 $1,766.30 Pre-judgment Interest

 _________ 


 $12,516.30 Total Damages (2)

 Williams bases this appeal on three points of error. First, he claims that the proper
measure of actual damages was the market value as opposed to the intrinsic value of the bracelet. 
Second, Williams argues that Dodson did not produce legally or factually sufficient evidence of
the actual damages awarded by the trial court. Finally, he argues that since there was no evidence
of actual damages, Dodson was not entitled to pre-judgment interest or additional awards under
DTPA section 17.50(b)(1). Points two and three presume the proper measure of actual damages
to be the market value of the bracelet.


DISCUSSION

 The principal issue in this case is whether the trial court employed the correct
measure of actual damages. The rule for determining the value of a marketable chattel that has
been lost or converted is well established. Damages are determined by whether the goods are held
for sale or for the comfort and well-being of the owner. Allstate Ins. Co. v. Chance, 590 S.W.2d
703 (Tex. 1979); Crisp v. Security Nat'l Ins. Co., 369 S.W.2d 326, 328-29 (Tex. 1963). The
supreme court in Crisp stated : 


The law of damages distinguishes between marketable chattels possessed for
purposes of sale and chattels possessed for the comfort and well-being of the
owner. In the instance of the former, it judges their value by the market price. In
the instance of the latter, it measures their loss, not by their value in a secondhand
market, but by the value of their use to the owner who suffers from their
deprivation. 



Crisp, 369 S.W.2d at 329. The primary principle to be applied in awarding damages for loss of
property is that the owner should be compensated for the actual loss sustained. International-Great N. Ry. Co. v. Casey, 46 S.W.2d 669, 670 (Tex. Comm'n App. 1932, holding approved);
Rosenfield v. White, 267 S.W.2d 596, 599 (Tex. Civ. App.--Dallas 1954, writ ref'd n.r.e.). If
the value of the converted property to its owner is in the owner's use of the property, then the
owner's actual loss is the loss of the use of the property. In such a situation, the measure of
damages is the intrinsic value of the property to the owner. If, however, the property is held by
the owner for the purpose of sale, then the owner's actual loss is what the owner would have
received from its sale, i.e., its market value. 

 Although the trial court made several findings of fact, it made no finding concerning
whether the bracelet was held for sale or for the comfort and well-being of the owner. The trial
court did make findings establishing the market value and the intrinsic value of the bracelet. The
values were the same, $8,750. 

 When a party requests and the court files findings of fact, an omitted finding can
be presumed when (1) an element of the ground of recovery was included in the findings of fact,
(2) the omitted element has not been properly requested, and (3) the omitted finding is supported
by the evidence. Tex. R. Civ. P. 299; Tarrant County Water Control & Improvement Dist. v.
Haupt, Inc., 854 S.W.2d 909, 913 (Tex. 1993); American Nat'l Ins. Co. v. Paul, 927 S.W.2d
239, 245 (Tex. App.--Austin 1996, writ denied).

 In the instant case, the court's findings adequately establish Williams's liability for
conversion and violation of the DTPA. The trial court specifically found that: (1) Dodson did
not agree to allow the jewelry to be sold, (2) Williams sold the bracelet without Dodson's
permission, (3) Williams engaged in deceptive trade practices, (4) as a result of Williams's actions
Dodson suffered actual damages, and (5) the intrinsic value of the bracelet was $8,750. Neither
party requested the trial court to make additional findings regarding the purpose for which the
Dodsons possessed the bracelet. (3) Thus, we may presume, because the Dodsons' testimony
supports, a deemed finding by the trial court that the bracelet was held for their comfort and well-being. Dodson gave the bracelet to Mrs. Dodson, and the couple owned the piece of jewelry for
about fifteen years. Mrs. Dodson wore the bracelet from the 1970s until around 1990. In other
words, she used it for her own personal enjoyment. 

 "[H]ousehold furniture, family records, wearing apparel, personal effects, and
family portraits" are examples of objects that are typically held for the comfort and well-being of
the owner. Crisp, 369 S.W.2d at 329. Jewelry has been specifically classified as a personal
effect. "Personal effects are defined to mean articles of personal property 'bearing intimate
relation or association to the person.' Generally considered as personal effects are clothing,
jewelry, and similar chattels." Dearmann v. Dutschmann, 739 S.W.2d 454, 455 (Tex.
App.--Corpus Christi 1987, writ denied) (quoting First Methodist Episcopal Church S. v.
Anderson, 110 S.W.2d 1177, 1183 (Tex. Civ. App.--Dallas 1937, writ dism'd)) (emphasis
added); see also Twiford v. Nueces County Appraisal Dist., 725 S.W.2d 325, 328 (Tex.
App.--Corpus Christi 1987, writ ref'd n.r.e.).

 Williams contends that the bracelet was not possessed for the Dodsons' comfort and
well-being. He claims that because Mrs. Dodson had not worn the bracelet in three years and
Dodson took it to him to try to sell it, the property was held only for purposes of sale. Williams
essentially argues that the character of personal effects is continuously changing and should be
determined at an exact moment in time rather than by the overall use for which the property was
employed. We disagree.

 Williams cites no authority supporting his position that once the Dodsons decided
to try to sell the bracelet, the jewelry became an object possessed solely for the purpose of sale,
and we decline to hold that property long held for one purpose changes its character because the
owner determines to dispose of it. We conclude that the bracelet in question should be categorized
based upon how it was generally held. The evidence in this case reveals that, over a period of
fifteen years, the diamond and emerald bracelet was held exclusively for the comfort and well-being of Mrs. Dodson, despite the fact that the Dodsons ultimately decided to dispose of it by sale.

 We therefore hold that the proper measure of damages to be applied in this case is
the intrinsic value of the bracelet. As ample evidence appears in the record to support the trial
court's finding of the bracelet's intrinsic value, Williams's first point of error is overruled.

 Our conclusion that intrinsic value is the proper measure of actual damages also
disposes of Williams's second point of error. Williams's argument that Dodson did not produce
legally or factually sufficient evidence of the actual damages awarded by the trial court rests
entirely upon the premise that market value is the correct measure of damages. Market value is
not the correct measure of damages in this case. Williams's second point of error is overruled. 

 Williams's third point of error is also without merit. There was sufficient evidence
of actual damages to support the trial court's award of prejudgment interest and two times
Dodson's actual damages that did not exceed $1,000, pursuant to DTPA section 17.50(b)(1).
Williams's third point of error is overruled.


CONCLUSION

 Having overruled the appellant's three points of error, we affirm the judgment of
the trial court.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: July 16, 1998

Publish
1. The Dodsons apparently did not cash the check.
2. The trial court did not award treble damages because he determined that Williams's
conduct was not committed knowingly. Moreover, the trial court did not award attorney's fees
because there was no evidence to support such an award.
3. Texas Rule of Civil Procedure 298 permits parties to request additional findings of fact and
conclusions of law within ten days of receiving the court's original findings and conclusions. See
Tex. R. Civ. P. 298.



 purpose for which the
Dodsons possessed the bracelet. (3) Thus, we may presume, because the Dodsons' testimony
supports, a deemed finding by the trial court that the bracelet was held for their comfort and well-being. Dodson gave the bracelet to Mrs. Dodson, and the couple owned the piece of jewelry for
about fifteen years. Mrs. Dodson wore the bracelet from the 1970s until around 1990. In other
words, she used it for her own personal enjoyment. 

 "[H]ousehold furniture, family records, wearing apparel, personal effects, and
family portraits" are examples of objects that are typically held for the comfort and well-being of
the owner. Crisp, 369 S.W.2d at 329. Jewelry has been specifically classified as a personal
effect. "Personal effects are defined to mean articles of personal property 'bearing intimate
relation or association to the person.' Generally considered as personal effects are clothing,
jewelry, and similar chattels." Dearmann v. Dutschmann, 739 S.W.2d 454, 455 (Tex.
App.--Corpus Christi 1987, writ denied) (quoting First Methodist Episcopal Church S. v.
Anderson, 110 S.W.2d 1177, 1183 (Tex. Civ. App.--Dallas 1937, writ dism'd)) (emphasis
added); see also Twiford v. Nueces County Appraisal Dist., 725 S.W.2d 325, 328 (Tex.
App.--Corpus Christi 1987, writ ref'd n.r.e.).

 Williams contends that the bracelet was not possessed for the Dodsons' comfort and
well-being. He claims that because Mrs. Dodson had not worn the bracelet in three years and
Dodson took it to him to try to sell it, the property was held only for purposes of sale. Williams
essentially argues that the character of personal effects is continuously changing and should be
determined at an exact moment in time rather than by the overall use for which the property was
employed. We disagree.

 Williams cites no authority supporting his position that once the Dodsons decided
to try to sell the bracelet, the jewelry became an object possessed solely for the purpose of sale,
and we decline to hold that property long held for one purpose changes its character because the
owner determines to dispose of it. We conclude that the bracelet in question should be categorized
based upon how it was generally held. The evidence in this case reveals that, over a period of
fifteen years, the diamond and emerald bracelet was held exclusively for the comfort and well-being of Mrs. Dodson, despite the fact that the Dodsons ultimately decided to dispose of it by sale.

 We therefore hold that the proper measure of damages to be applied in this case is
the intrinsic value of the bracelet. As ample evidence appears in the record to support the trial
court's finding of the bracelet's intrinsic value, Williams's first point of error is overruled.

 Our conclusion that intrinsic value is the proper measure of actual damages also
disposes of Williams's second point of error. Williams's argument that Dodson did not produce
legally or factually sufficient evidence of the actual damages awarded by the trial court rests
entirely upon the premise that market value is the correct measure of damages. Market value is
not the correct measure of damages in this case. Williams's second point of error is overruled. 

 Williams's third point of error is also without merit. There was sufficient evidence
of actual damages to support the trial court's award of prejudgment interest and two times
Dodson's actual damages that did not exceed $1,000, pursuant to DTPA section 17.50(b)(1).
Williams's third point of error is overruled.


CONCLUSION

 Having overruled the appellant's three points of error, we affirm the judgment of
the trial court.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: July 16, 1998

Publish
1. The Dodsons apparently did not cash the check.
2. The trial court did not award tr