ALAN REUBER CHEVROLET,
INC., Appellant

v.

GRADY CHEVROLET, LTD.,
Formerly Grady Chevrolet
Company, Appellee.

No. 05–08–00107–CV.

Court of Appeals of Texas,
Dallas.

June 9, 2009.

Jay Edward Ray, Glast, Phillips & Murray, PC, Dallas, for Appellant.

Joe E. Weis, Pemberton, Green, Newcomb and Weis, Greenville, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion by Justice MOSELEY.

In this appeal, we decide whether: (1) Alan Reuber Chevrolet, Inc. (ARCI) is entitled to recover attorney's fees as the successful party to Grady Chevrolet, Ltd.'s breach of contract claim, despite pleading and procedure issues; and (2) the evidence supports the findings on the damages awarded to Grady Chevrolet on its conversion claim. Because we answer both of those questions in the affirmative, we reverse the trial court's revised final judgment to the extent it denies ARCI's claim for attorney's fees and remand this case to the trial court for further proceedings on that claim. In all other respects, we affirm the revised final judgment.

## I. FACTUAL BACKGROUND

Jerry Grady was the president of Grady Chevrolet Company, which operated a Chevrolet dealership in Greenville, Texas. Alan Reuber was the president of ARCI and AMTJ, Inc. In September 2001, Grady and Reuber, as corporate officers, signed a Dealership Asset Sale and Purchase Agreement whereby AMTJ, Inc. agreed to buy Grady Chevrolet's assets under the terms and conditions in the agreement.

Four provisions of the agreement are relevant to the issues presented on appeal. First, AMTJ, Inc. agreed to buy fixed assets at a price calculated on their fair market value as appraised. Second, AMTJ, Inc. also agreed to buy all the "non-obsolete current, unused, new and returnable Chevrolet factory parts and accessories" on hand when the sale closed. These parts were to be inventoried and valued at the net cost to Grady Chevrolet as set forth in the most recent Chevrolet price book, less any discounts or rebates reflected on the parts invoices. Third, AMTJ, Inc. agreed to purchase "all non-Chevrolet factory parts and accessories" on hand at the time of closing at fair market value, but if the parties could not agree on their fair market value, they would not be subject to the agreement.

Fourth, the agreement provided (in section 17) the following regarding attorney's fees and costs:

> In the event of any litigation between the Parties hereto to enforce any provisions or rights hereunder, the unsuccessful Party to such litigation shall pay to the successful Party therein all costs and expenses expressly including, but not limited to, reasonable attorney's fees ..., which ... attorney's fees shall be included in and as part of any judgment rendered in such litigation.

The fixed assets were appraised by Travis R. Fralicks, who submitted an appraisal to both parties. The parts were inventoried and valued by Leighton Railsback; he referred to a nonreturnable part as a "nonconforming" part.[1] As relevant here, he valued the nonreturnable parts at just under $60,000. Before the closing, AMTJ, Inc. assigned its rights and obligations under the agreement to ARCI. The sale closed November 13, 2001, with the sale price based on the appraisals and inventories.

Four days after the closing, Grady mistakenly opened an envelope from Fralicks to Reuber; the envelope contained another appraisal—at higher values—of the fixed assets involved in the sale. Attached to the second appraisal was a handwritten note from Fralicks to Reuber: "Alan: This info for your use only." Grady believed the second appraisal was evidence that he received less at the closing than he should have received. Additionally, Grady was unsuccessful in obtaining the nonreturnable parts, which had been excepted from the sale, from ARCI.

## II. PROCEDURAL BACKGROUND

Grady Chevrolet filed suit against ARCI and others. In its third amended original petition, Grady Chevrolet asserted, among other claims, claims for breach of contract and conversion. As part of its breach of contract claim, Grady Chevrolet alleged ARCI failed to pay the true market value of the fixed assets and failed to allow Grady Chevrolet to retrieve the nonreturnable parts. Grady Chevrolet alleged it was entitled to recover its reasonable and necessary attorney's fees pursuant to section 17 of the agreement and civil practice and remedies code chapter 38.

In its conversion claim, Grady Chevrolet alleged the nonreturnable parts remained the property of Grady Chevrolet, and that despite numerous efforts to make arrangements to take possession of those parts, ARCI refused to allow Grady Chevrolet to do so and thus converted the nonreturnable parts. Grady Chevrolet alleged those parts were worth $60,000, and that as a result of the conversion it suffered damages of approximately $100,000, representing the cost of the parts plus the lost profits it would have realized had on the sale of those parts.

In its first amended original answer, filed after Grady Chevrolet filed its third amended petition, ARCI generally denied Grady Chevrolet's allegations. Although the pleading did not specifically request attorney's fees under section 17 of the agreement, it did include a prayer for attorney's fees. Grady Chevrolet did not file a special exception to this pleading.

The case was tried before the court. In opening statements, counsel for ARCI as-

---

1. Testimony at trial established that a nonreturnable part was: (1) a GM part that was not on the current GM price schedule, the "parts computer tape" provided to dealerships for ordering purposes; (2) a GM part that was in poor condition or from a opened, soiled, or torn package that could not be returned to GM; (3) a GM part purchased from a warehouse distributor; or (4) a non-GM part.

serted, among other things, that if it prevailed on the breach of contract claim, it would be entitled to attorney's fees under the agreement. During trial, Grady Chevrolet abandoned all claims *except* its breach of contract and conversion claims (against AMTJ, Inc. and ARCI) and its fraud and civil conspiracy claims (against AMTJ, Inc., ARCI, Reuber, and Fralicks).[2]

After the parties rested and closed, the trial court stated that final arguments would be submitted in writing, including arguments concerning the recovery of attorney's fees. The trial court also stated that after it ruled on liability issues, the parties could submit affidavits on attorney's fees if attorney's fees were awarded. Both sides filed a "Closing Arguments and Trial Brief" directed to their theories of recovery, the evidence, and recovery of attorney's fees. In its rebuttal to Grady Chevrolet's closing argument, ARCI argued Grady Chevrolet had failed to prove its contractual claims against ARCI, and thus was an "unsuccessful party" under section 17 of the agreement and responsible for ARCI's attorney's fees. ARCI also argued that its first amended original answer gave Grady Chevrolet fair notice of its claim for attorney's fees, and, if not, it requested leave to file a trial amendment.

Subsequently, the trial court sent the parties a letter (the September 10, 2007 letter) "address[ing] the findings on the various causes of action Defendant by Defendant." Pertinent to this appeal, the trial court found in favor of ARCI on Grady Chevrolet's breach of contract claim and in favor of Grady Chevrolet on its conversion claim. The trial court also said that, although ARCI and the other defendants prevailed on the breach of contract claim and were the "successful parties,"

there were no specific pleadings requesting attorney's fees by any defendant. Further, it said that ARCI's request for attorney's fees in the prayer alone, not in the body of the answer, was "insufficient and too unspecific" to be the basis of an award of attorney's fees under the agreement. Therefore, the court would not award attorney's fees to any defendant. Grady Chevrolet's counsel was requested to draft an order consistent with the trial court's findings.

ARCI moved for leave to file a trial amendment "to state and clarify" that its request for attorney's fees, set forth in the prayer of its first amended original answer, sought to recover attorney's fees under section 17 of the agreement "under which [Grady Chevrolet] asserted its breach of contract claim[.]" Grady Chevrolet opposed the motion, arguing the request was untimely in light of the trial court's "judgment" (that is, the September 10, 2007 letter) and it would be surprised and prejudiced by an amended pleading. At the October 11, 2007 hearing on the trial amendment issue, Grady Chevrolet announced that it was abandoning its breach of contract causes of action.

The trial court denied ARCI's motion. In its revised final judgment, the trial court awarded Grady Chevrolet $98,949.85 in actual damages from ARCI based on its conversion claim, as well as prejudgment interest. The judgment also stated that all relief requested and not expressly granted was denied, and the judgment finally disposed of all parties and claims. The court did not award ARCI attorney's fees. ARCI requested, and the trial court filed, findings of fact and conclusions of law. This appeal followed.

---

**2.** The outcome of the fraud and civil conspiracy claims is not at issue on appeal, and those claims need not be discussed further.

## III. ATTORNEY'S FEES

Pertinent to the issues on appeal as to ARCI's request for attorney's fees, trial court found that: (1) ARCI's live pleading contained a general prayer for recovery of attorney's fees without specifying any statute or other basis on which ARCI could recover attorney's fees; and (2) although Grady Chevrolet failed to meet its burden of proof on its breach of contract claim against ARCI, Grady Chevrolet abandoned its breach of contract claim against ARCI before the judgment was signed.

In its first and third issues, ARCI attacks the trial court's failure to award it attorney's fees as the successful party on Grady Chevrolet's breach of contract claim. Specifically, ARCI argues the trial court erred in denying its attorney's fees claim as the "successful party" under the agreement on the grounds that: (1) it had not sufficiently pleaded that claim; and (2) Grady Chevrolet abandoned its breach of contract claim after the trial court had already found that ARCI had not breached the contract.

### A. Standard of Review

A trial court's conclusions of law are always reviewable. *Spiller v. Spiller*, 901 S.W.2d 553, 556 (Tex.App.-San Antonio 1995, writ denied). We uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* We do not reverse a conclusion of law unless it is erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). We review a trial court's conclusions of law de novo as legal questions, affording no deference to the lower court's decision. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 227 (Tex. 2002). Under de novo review, we exercise our own judgment and redetermine each

legal issue. *Id.* at 222. We do not reverse a judgment for incorrect conclusions of law if the controlling findings of fact support the judgment under a correct legal theory. *Westech Eng'g, Inc.*, 835 S.W.2d at 196.

### B. Sufficient Pleading for Attorney's Fees

In its first issue, ARCI argues it properly pleaded for the recovery of its attorney's fees in its first amended original answer and its general request for attorney's fees therein provided sufficient and fair notice to Grady Chevrolet that it was seeking attorney's fees pursuant to section 17.

■ ARCI's briefing is directed primarily to the trial court's statement in the September 10, 2007 letter that ARCI's request for attorney's fees "in the prayer alone, and not in the body of its answer, is insufficient, and too unspecific, to be the basis of an award of attorneys' fees under the [agreement]." Prejudgment letters of this sort do not constitute findings of fact and conclusions of law and are not competent evidence of a trial court's basis for judgment. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex.1990) (discussing letter to parties characterized as findings of fact, trial court "could have disregarded the evidence at the time judgment was actually signed" and such letter "is not a finding of fact" as contemplated by rules of civil procedure 296 through 299); *Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex.App.-Austin 1997, pet. denied) (prejudgment letter "cannot constitute findings of fact and conclusions of law"; citing *Cherokee Water Co.*, 801 S.W.2d at 878). However, in its findings of fact, the trial court stated:

20. Said First Amended Original Answer filed by ARCI, within its prayer, contained a general prayer for recovery of attorney's fees with-

out specifying any statute or other basis on which attorney's fees could be recovered by ARCI.

While this conclusion of law, stated as a finding of fact, does not exactly express the same opinion in the letter, we conclude that ARCI's arguments encompass and attack this conclusion.

### 1. Applicable Law and Standard of Review

■■ Attorney's fees may not be recovered unless provided for by statute or by contract between the parties. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.1992). Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity. *State v. Estate of Brown*, 802 S.W.2d 898, 900 (Tex.App.-San Antonio 1991, no pet.) (citing *Wolters v. White*, 659 S.W.2d 885, 888 (Tex.App.-San Antonio 1983, writ dism'd), and *Ex parte Fleming*, 532 S.W.2d 122, 123 (Tex.Civ.App.-Dallas 1975, orig. proceeding)). *See In re Pecht*, 874 S.W.2d 797, 803 (Tex.App.-Texarkana 1994, no writ) ("In order to be entitled to a discretionary award of attorney's fees, however, the movant must affirmatively plead for them unless the issue is waived or tried by consent.").

■ "The office of pleadings is to define the issues at trial, and to give the opposing party information sufficient to enable him to prepare a defense." *Estate of Brown*, 802 S.W.2d at 900 (quoting *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982), and *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982)). "Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000)). *See* TEX.R. CIV. P. 47(a).

■ A general prayer for relief will not support an award of attorney's fees because it is a request for affirmative relief that must be supported by the pleadings. *Varner v. Howe*, 860 S.W.2d 458, 466 (Tex.App.-El Paso 1993, no writ). *See Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex.1979) ("The prayer for general relief is of no assistance [in giving fair notice of a claim] because a prayer must be consistent with the facts stated as a basis for relief."). However, in passing on the sufficiency of a pleading, all allegations in the adversary's pleading may be considered, and any omission in the pleading is cured when the omission is supplied by the opponent's pleading. *S. Ins. Co. v. Fed. Serv. Fin. Corp.*, 370 S.W.2d 24, 28 (Tex.Civ.App.-Austin 1963, writ dism'd). *See Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980) ("In determining whether issues are supported by pleadings, the trial court will supply omissions in the pleadings of one party by referring to the allegations contained in the pleadings of another."); *Lacy v. First Nat'l Bank*, 809 S.W.2d 362, 365 (Tex.App.-Beaumont 1991, no writ) (same); *Whittington v. Glazier*, 81 S.W.2d 543, 545 (Tex.Civ.App.-Texarkana 1935, writ ref'd) (same). An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment. *Auld*, 34 S.W.3d at 897. When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader. *Id.*

■ Whether a party is entitled to recover attorney's fees is a question of law

that we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

## 2. Discussion

■ Grady Chevrolet's third amended original petition requested attorney's fees pursuant to section 17 in the event it prevailed on its breach of contract claims. Thereafter, ARCI filed its first amended original answer, which contained the following final paragraph:

> WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiff take nothing by its action, that all costs be taxed against Plaintiff, that the Court award Defendant its reasonable and necessary attorneys' fees, and that Defendant receive such other and further relief at law or in equity to which it may be entitled.

Grady Chevrolet did not specially except to this pleading.

ARCI's general prayer for relief (i.e., "such other and further relief at law or in equity . . .") does not support an award for attorney's fees. *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 701–02 (Tex.App.-San Antonio 1998, pet. denied) (citing *Wolters*, 659 S.W.2d at 888–89). However, ARCI's prayer also requested attorney's fees, albeit without specifying that it sought attorney's fees pursuant to section 17 of the agreement. In light of Grady Chevrolet's own filed pleading requesting for attorney's fees pursuant to section 17, we conclude that Grady Chevrolet could "ascertain from [ARCI's pleading] the nature, basic issues, and the type of evidence that might be relevant to the controversy." *See Low*, 221 S.W.3d at 612; *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896–97.

Nevertheless, Grady Chevrolet directs our attention to *Kreighbaum v. Lester*, No. 05–06–01333–CV, 2007 WL 1829729 (Tex. App.-Dallas June 27, 2007, no pet.) (mem. op.), arguing it is directly on point in support of the trial court's conclusion. We disagree. There the appellants' prayer for relief (like ARCI's) contained a nonspecific request for attorney's fees; however (and unlike ARCI's) their counterclaim specifically alleged the DTPA as the basis for their request for attorney's fees. *See id.* at *3. We concluded that an opposing attorney reading that pleading would not conclude that appellants' were also seeking attorney's fees under the contract. *Id.* Additionally, the opinion in *Kreighbaum* is silent as to whether the opposing party's pleadings (like Grady Chevrolet's pleadings here) contained a request for attorney's fees under the contract.

To bolster its argument based on *Kreighbaum*, Grady Chevrolet points to the answer and counterclaim filed by AMTJ, Inc. (ARCI's assignor). From the briefs,[3] it appears that pleading, filed before ARCI was added as a defendant, alleged that Grady Chevrolet violated a covenant not to compete contained within the agreement, and requested attorney's fees pursuant to chapter 38 of the Texas Civil Practice and Remedies Code.[4] The same attorney representing AMTJ, Inc. later represented ARCI as well. Thus Grady Chevrolet argues that, like the opposing attorney in *Kreighbaum*, its attorney could not conclude from ARCI's pleading that it was seeking attorney's fees under the contract.

We remain unpersuaded. We find no basis for construing AMTJ, Inc.'s pleading to relate to ARCI. Even if it could be construed to relate to ARCI as well, the

---

3. That pleading is not included in the record on appeal.

4. AMTJ, Inc. abandoned that counterclaim during trial.

filing of ARCI's first amended original answer would supersede AMTJ, Inc.'s original answer as to ARCI. *See Johnson v. Coca–Cola Co.,* 727 S.W.2d 756, 758 (Tex. App.-Dallas 1987, writ ref'd n.r.e.) (amended pleading supersedes and supplants all previous pleadings, citing TEX.R. CIV. P. 65). In light of Grady Chevrolet's own pleadings seeking attorney's fees under the agreement, its argument it lacked fair notice because of an unspecific ground in the prayer in ARCI's live pleading is not persuasive.[5]

Thus under the facts of this case, including the existence of Grady Chevrolet's own request for attorney's fees under the agreement and its failure to specially except to ARCI's pleading, ARCI's pleading was sufficient to give fair notice to Grady Chevrolet that it sought attorney's fees pursuant to section 17 of the agreement. *See Low,* 221 S.W.3d at 612; *F.M. Stigler, Inc.,* 609 S.W.2d at 756; *Auld,* 34 S.W.3d at 896–97. Consequently, to the extent ARCI's first issue argues that it properly pleaded for the recovery of its attorney's fees pursuant to section 17, we resolve that issue in ARCI's favor. Because of our resolution of this issue, we need not address ARCI's second issue, in which it contends the trial court abused its discretion in refusing to grant its trial amendment to request specifically attorney's fees pursuant to section 17.

## C. Successful Party and Abandonment of Breach of Contract Claim

The parties' live pleadings were filed in July 2007. The record shows that the parties presented evidence and, on August 3, 2007, the parties rested and closed. The September 10, 2007 letter announced the trial court's decision against Grady Chevrolet on its breach of contract claim against ARCI. At the October 11, 2007 hearing on ARCI's motion for trial amendment, counsel for Grady Chevrolet abandoned the contract claim. A final judgment was signed on October 23, 2007. It was withdrawn, and the revised final judgment (to correct the beginning date of the prejudgment interest) was signed November 27, 2007.

In its third issue, ARCI argues Grady Chevrolet could not avoid its liability for attorney's fees under the agreement by abandoning its breach of contract cause of action after presenting its evidence and the trial court's finding, in the September 10, 2007 letter, against it on that claim; ARCI also argues that, even assuming such abandonment was permitted, ARCI remained the successful party for purposes of payment of attorney's fees pursuant to section 17.

---

**5.** At oral argument, Grady Chevrolet also directed our attention to *Turner v. Turner,* No. 09–06–570–CV, 2008 WL 2522083 (Tex.App.-Beaumont June 26, 2008, pet. denied) (mem. op.). In that case, Husband sued Wife for breach of an agreement dividing the couple's community estate, among other claims. Wife filed counterclaims for conversion and loss of revenue; in her prayer, she requested an award of attorney's fees. *Id.* at *2. Wife challenged the trial court's failure to award her attorney's fees pursuant to a section in the agreement providing attorney's fees "[i]f one of the parties sues to set aside ... this agreement...." *Id.* at *4. The court of appeals declined to hold that the trial court erred; it looked at the "general prayer" in Wife's pleading in conjunction with the factual pleadings and her two counterclaims and decided that "her attorney's fee claim is not based on the claims raised by her pleadings...." *Id.* at *4–5. In light of the agreement's express wording as to attorney's fees, Husband's pleading would not have supplied this specific section of the agreement to cure its omission in Wife's pleading as to her request for attorney's fees, although *Turner* is silent on this issue, like *Kreighbaum.* We conclude that *Turner* is distinguishable from the case before us, and does not support the trial court's conclusion.

### 1. Applicable Law

■ Rule of civil procedure 165 provides: "A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." TEX.R. CIV. P. 165. Rule 165 permits an abandonment of a part of a claim or defense before, but not after, trial of the cause and entry of the judgment. *Person v. Latham*, 582 S.W.2d 246, 250 (Tex.Civ.App.-Beaumont 1979, writ ref'd n.r.e.). This is the same requirement as for a nonsuit. *In re R.G., Jr.*, 865 S.W.2d 504, 508 (Tex.App.-Corpus Christi 1993, no writ) (citing TEX.R. CIV. P. 162).

■ Texas Rule of Civil Procedure 162 provides, in relevant part:

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes....

Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court.

TEX.R. CIV. P. 162. Although a plaintiff decides which of its claims to pursue or abandon, that decision does not control the fate of a nonmoving party's independent claims for affirmative relief. *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex.2008). For example, a plaintiff's nonsuit cannot extinguish a defendant's counterclaim for costs and attorney's fees. *Id.* *See Dean Foods Co. v. Anderson*, 178 S.W.3d 449, 453 (Tex.App.-Amarillo 2005, pet. denied) ("A request for attorney's fees is a claim for affirmative relief.").

### 2. Discussion

■ We question whether Grady Chevrolet could abandon of its breach of contract claim after the September 10, 2007 letter. However, even assuming it could, the dispositive issue here is the effect of such abandonment on ARCI's request for attorney's fees. Rule 165 does not address this issue, but rule 162 does. ARCI's request for attorney's fees was a pending claim for affirmative relief. *See Dean Foods Co.*, 178 S.W.3d at 453. Accordingly, even if Grady Chevrolet abandoned its breach of contract claim, such abandonment could not prejudice ARCI's claim for attorney's fees and had no effect on it. *See Villafani*, 251 S.W.3d at 469. Thus, the trial court's finding and conclusion concerning Grady Chevrolet's abandonment of its breach of contract claim do not support its ultimate conclusion that ARCI was not entitled to recover attorney's fees.

The trial court found that Grady Chevrolet did not prove by a preponderance of the evidence that ARCI breached the agreement. The legal effect of this finding is that ARCI was the successful party pursuant to section 17 concerning attorney's fees. Thus, the trial court erred in concluding that ARCI was not entitled to recover attorney's fees from Grady Chevrolet. We resolve ARCI's third issue in its favor.

### IV. CONVERSION

Pertinent to Grady Chevrolet's conversion claim, the trial court found that Grady Chevrolet owned the nonreturnable parts; ARCI had possession of them and could have identified and segregated them; and ARCI never allowed Grady Chevrolet to retrieve these parts, despite Grady's repeated requests to Reuber, for which Gra-

dy Chevrolet suffered damages of $98,949.85.

In its fourth issue, ARCI attacks the legal and factual sufficiency of the evidence supporting the trial court's findings of fact and judgment for $98,949.85 in actual damages on Grady Chevrolet's conversion claim. Specifically, ARCI argues Grady Chevrolet failed to establish its actual damages when it failed to establish the identity of the converted property, the date of conversion, the property's fair market value, and Grady Chevrolet's lost profits. We interpret ARCI's arguments as challenging the trial court's findings that ARCI was able to identify and segregate the nonreturnable parts and that because ARCI failed to allow Grady Chevrolet to retrieve these parts, it suffered actual damages in the amount of $98,949.85.

### A. Standard of Review

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict and may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). When an appellant challenges the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding. *Pete Dominguez Enters., Inc. v. County of Dallas,* 188 S.W.3d 385, 387 (Tex.App.-Dallas 2006, no pet.). To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513,

519 (Tex.2002) (plurality op.). We view the evidence in the light favorable to the finding, crediting favorable evidence if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.,* 234 S.W.3d 726, 736 (Tex.App.-Dallas 2007, pet. denied).

To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985). This Court, however, is not a fact finder, and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *See Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

### B. Applicable Law

The elements of a conversion cause of action are: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property. *Ojeda v. Wal–Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex.App.-San Antonio 1997, pet. denied).

A plaintiff must prove damages before recovery is allowed for conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex.1997) (per curiam). Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion. *Id.* at 147–48. However, damages are limited to the amount necessary to compensate the plaintiff for the actual losses sustained as a natural and proximate result of the defendant's conversion. *Id.* at 148. A conversion should not unjustly enrich either the wrongdoer or the complaining party. *Id.*

"Market value" is the price property would bring if it were offered for sale by a willing but not obligated seller and purchased by a willing but not obligated buyer. *Redman Homes, Inc. v. Ivy*, 901 S.W.2d 676, 685 (Tex.App.-El Paso 1995), *aff'd in part & rev'd & remanded in part on other grounds*, 920 S.W.2d 664 (Tex.1996). Purchase price is ordinarily not even admissible to show market value at a particular later time. *Id.* A property owner is qualified to testify to the market value of his property. *Id.* This testimony must show that it is based on market value and not some intrinsic or other value such as replacement cost. *Id.* *See Redman Homes, Inc.*, 920 S.W.2d at 669. If the property is held by the owner for the purpose of sale, then the owner's actual loss is what the owner would have received from its sale, that is, its market value. *Williams v. Dodson*, 976 S.W.2d 861, 864 (Tex.App.-Austin 1998, no pet.).

## C. Discussion

The evidence established that Railsback and his team inventoried the dealership's automobile parts using the dealership's parts inventory control list and counting the parts "bin by bin, part number by part number." Their working papers also included a separate list of the nonreturnable parts that were not on the dealership's system. To arrive at a value of the GM parts, both returnable and nonreturnable, Railsback used the GM price tapes, which showed the current price. For non-GM parts, Railsback used Grady Chevrolet's purchase price, or what it had actually paid for those parts. Railsback testified the nonreturnable parts were identified on his inventory control sheets. He created instructions to identify those parts on the sheets, but no one ever asked for those instructions.

Plaintiff's Exhibit 4 was a summary of Railsback's working papers showing his valuation of the dealership's parts inventory. It is dated November 11, 2001, two days before the closing. It showed the value of all the parts—$352,579.81—and the nonreturnable parts—$59,969,61. Railsback gave Grady and Reuber each a copy of his working papers.

Grady testified that before the closing, he and Reuber agreed that Reuber and his parts manager would pull the nonconforming parts from the parts bin and box them "just as soon as possible," and Grady would pick them up. Grady testified he tried unsuccessfully to make arrangements with Reuber to retrieve the nonreturnable parts and that Reuber said "on numerous occasions" he "would take care of it for" Grady. Eddie Rogers, Grady Chevrolet's parts manager, who continued to work for Reuber for about a month after the closing, knew how to identify the nonreturnable parts. Rogers testified by deposition that, after the closing, he asked Reuber if he could have the parts list so he could start pulling Grady's parts, but Reuber said not to worry about it, that he did not care about Grady's parts. Reuber testified that he did not recall agreeing to segregate the nonreturnable parts for Grady.

Relying on *Tuscano v. Osterberg*, 82 S.W.3d 457 (Tex.App.-El Paso 2002, no pet.), ARCI argues there is no evidence identifying the converted parts by type or make. In that case, the converted property was identified as "merchandise"; the complaining party "could not identify what merchandise she did not receive." *Id.* at 470. Here, it is undisputed that the "parts" were automobile parts used by the dealership in servicing vehicles, such as spark plugs, water pumps, and gaskets. Grady testified some were GM parts and others were from other manufacturers or distributors. As to parts numbers, Railsback testified by deposition that his working papers, which were not admitted into evidence, reflected an inventory of each part by part number.

ARCI also argues that the evidence identifying the parts is insufficient because the number of nonreturnable parts was not established. ARCI points to Grady's testimony that he did not know how many parts were represented on Exhibit 4, but there "a lot more" than ten or fifteen and fewer than 5,000. We reject this argument because, as noted above, Railsback testified his working papers showed the number of parts inventoried. Because there was testimony some sales could have been made, but no evidence that any sales were made, we also reject ARCI's argument that some of the unsegregated nonreturnable parts could have been sold between the time they were inventoried and the closing.

We next address ARCI's argument that Grady Chevrolet failed to prove the date of the conversion. We noted above that Grady testified that before the closing Reuber agreed the nonreturnable parts would be pulled and boxed "just as soon as possible" for Grady to retrieve. Further, after the closing, Reuber said he would "take care of" the return of the nonreturnable parts,

but never did. Thus, there was evidence that Grady owned the nonreturnable parts as of the closing, he demanded to retrieve them before and after that date, and Reuber refused. Reuber's testimony that he did not recall agreeing to segregate nonreturnable parts for Grady reflects a conflict in the evidence, which we presume was resolved by the fact finder in support of its judgment—i.e., in favor of Grady Chevrolet. *See Clancy*, 705 S.W.2d at 826. ARCI argues Grady made no written demand until suit was filed, but it was undisputed at trial—after suit was filed—that ARCI still had not returned the parts to Grady Chevrolet.

ARCI also argues there is no evidence establishing the market value of the converted property. Railsback's testimony showed that the dollar value of the nonreturnable parts on Exhibit 4 reflected either the current price of a part or the price the dealership had paid for it. Grady testified that the markup on all the nonreturnable parts at Grady Chevrolet was forty percent, which was "a standard markup." Grady explained: "If the retail price is $1 on a part, the 40 percent markup and the cost would be 60 cents. It's from the top down is the way the computer sets it up." He testified that forty percent was the retail price on the GM computer parts tape; he testified that parts had to be priced "so that a willing buyer was willing to pay whatever it was you were willing to sell if for." Grady further testified that, if he could have retrieved the nonreturnable parts, his brother, who owned another Chevrolet dealership, would have been able to sell them at retail for $100,000, which included his profit. Rogers testified that ninety-nine percent of the dollar amount listed on the summary could have been sold.

ARCI points to Grady's testimony about a possible bulk sale of the nonreturnable

parts to another dealer as evidence showing their value was not established. But the record shows that the testimony was speculation about a sale that would not have occurred because Grady testified he "[n]ever had the opportunity" to make such a sale. ARCI also points to Grady's testimony that some parts were marked up twenty-five percent, but Grady said the dealership did not have any of those parts.

ARCI also argues that Grady Chevrolet failed to present sufficient evidence to prove its lost profits. However, we note that Grady's testimony concerning the profits he would have received had he been able to sell the nonreturnable parts through his brother's dealership—his lost profits—was his calculation of the fair market value of those parts. The trial court made no express finding as to lost profits. *See Deaton,* 939 S.W.2d at 147–48; *Redman Homes, Inc.,* 920 S.W.2d at 669; *Williams,* 976 S.W.2d at 864.

We have viewed the evidence in the light favorable to the verdict, crediting favorable evidence if the fact finder reasonably could, and disregarding contrary evidence unless the fact finder reasonably could not. *See St. Joseph Hosp.,* 94 S.W.3d at 519; *Transp. Ins. Co.,* 879 S.W.2d at 25. After doing so, we conclude there is more than a scintilla of evidence to support the trial court's findings as to ARCI's ability to identify and segregate the nonreturnable parts and Grady Chevrolet's actual damages of $98,949.85 in actual damages for conversion. *City of Keller,* 168 S.W.3d at 807; *OAIC Commercial Assets, L.L.C.,* 234 S.W.3d at 736. In addition, we have considered all the evidence and cannot conclude that the evidence supporting these findings is so weak or so against the overwhelming weight of the evidence that the findings are clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176; *Dyson,* 692 S.W.2d at 457. Accordingly, because the

evidence is legally and factually sufficient to support these findings, we resolve ARCI's fourth issue against it.

## V. CONCLUSION

Having resolved ARCI's first and third issues relating to attorney's fees in its favor, and resolved its fourth issues relating to segregation and identity of the property and actual damages to Grady Chevrolet on its conversion claim against it, we reverse the revised final judgment to the extent it denies ARCI claim for attorney's fees and remand this case to the trial court for further proceedings on that claim. In all other respects, the revised final judgment is affirmed.