**Elizabeth THOMAS, Appellant,**

v.

**Dorothy Elizabeth COOK & Ardyss International, Inc., Appellees.**

No. 14–09–00892–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 25, 2011.

Elizabeth Thomas, Tomball, pro se.

Melvin Lee Smith, Jr., The Woodlands, Jamie Russell Bures, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

Elizabeth Thomas appeals from the trial court's final judgment confirming an arbitration award in favor of Ardyss International, Inc. and Dorothy Cook. We affirm.

## BACKGROUND

Cook and Thomas signed a "Distribution Contract" with Ardyss in 2007. Under this contract, Cook and Thomas were to receive commissions and bonuses for their joint efforts to sell Ardyss products including cosmetics, underwear, and weight loss supplements. Cook and Thomas jointly signed a single copy of the Distribution Contract; Cook signed in the space designated for the "Applicant" and Thomas signed in the space designated for the "Co–Applicant."

The Distribution Contract signed by Cook and Thomas specifically incorporates the Ardyss Policies and Procedures Manual. Section 9.3 of the manual includes the following arbitration provision:

Any controversy or claim arising out of or relating to the Agreement, or the Breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Distributors waive all rights to trial by jury or to any court. All arbitration proceedings shall be held in Las Vegas, Nevada. All parties shall be entitled to all discovery rights pursuant to the Federal Rules of Civil Procedure. There shall be one arbitrator, an attorney at law, who shall have expertise in business law transactions with a strong preference being an attorney knowledgeable in the direct selling industry, selected from the panel which the American Arbitration Panel provides. Each party to the arbitration shall be responsible for its own costs and expenses of arbitration, including legal and filing fees. The decision of the arbitrator shall be final and binding on the parties and may, if necessary, be reduced to a judgment in any court of competent jurisdiction. This agreement shall survive any termination or expiration of the Agreement.

Section 9.4 of the manual states that "[t]he Federal Arbitration Act shall govern all matters relating to arbitration."

Thomas sued Cook in August 2008, contending among other things that Cook had (1) created a new entity; and then (2) diverted Ardyss commission checks arising from their joint sales efforts to this entity instead of splitting the commissions between Thomas and Cook as required under the Distribution Contract. Thomas alleged that Ardyss violated the Distribution Contract by issuing commission checks to the new entity created by Cook, but she did not sue Ardyss in this pleading. Thomas asserted claims against Cook for tortious interference with prospective business advantage; breach of the Distribution Contract; conversion; and fraud. She also sought a temporary injunction and a declaratory judgment regarding the rights and responsibilities for payment of commissions and bonuses under the Distribution Contract. Cook answered with a general denial and asserted several affirmative defenses.

Thomas filed an amended petition in September 2008 and added Ardyss as a defendant. As to Cook, Thomas dropped her tortious interference claim and asserted claims for breach of the Distribution Contract; conversion; fraud; and money had and received. Thomas sued Ardyss for breach of the Distribution Contract. Thomas also requested a temporary injunction, along with a declaratory judgment "that sets out the rights and responsibilities regarding payment of commissions and bonuses under the Distribution Contract. . . ." Ardyss responded with a general denial and asserted several affirmative defenses.

Shortly after Thomas filed her amended petition, Ardyss and Cook filed a joint motion to compel arbitration under the Federal Arbitration Act. *See* 9 U.S.C. § 3 (2009). The trial court conducted a hearing on the motion in October 2008 but withheld its ruling. At a hearing on Thomas's request for a temporary injunction held on October 14, 2008, the trial court orally ruled on the motion to compel and stated: "I am compelling arbitration." However, the parties agreed to mediate their dispute as the hearing continued and Thomas's attorney passed on the request for a temporary injunction.[1] The trial

---

**1.** Thomas subsequently began representing herself in connection with the litigation and the arbitration.

court signed an agreed order to mediate. After mediation failed, Thomas filed a demand for arbitration against Ardyss and Cook in November 2008 with the American Arbitration Association.

In March 2009, Thomas filed an amended arbitration demand that omitted the claims against Cook. In April 2009, Thomas filed an amended petition in state court asserting claims solely against Cook. At approximately the same time, Thomas filed a complaint in federal district court asserting claims solely against Ardyss.[2]

The April 2009 state court petition against Cook asserted claims for tortious interference with prospective business advantage; breach of the Distribution Contract; breach of fiduciary duty; conversion; breach of the duty of good faith and fair dealing; and fraud. In addition to compensatory and exemplary damages, Thomas also sought attorney's fees under Chapter 38 of the Civil Practices and Remedies Code and an injunction.

Cook filed a second motion to compel arbitration in the trial court on April 29, 2009. Thomas responded to this motion and argued that the claims she asserted against Cook were not subject to arbitration. At a hearing on the motion held on May 15, 2009, Cook asserted that she had filed a counterclaim in the arbitration proceedings in December 2008 by joining Ardyss's arbitration counterclaim. Thomas responded that she had not received a pleading containing a counterclaim from Cook. The trial court asked Cook to provide evidence of her counterclaim, and she complied. The trial court then signed an order compelling the parties to arbitrate and staying all proceedings in the trial court pending completion of the arbitration.

Thomas filed a motion to reconsider the trial court's order compelling arbitration. At the June 2009 hearing on this motion, Thomas again claimed that she had not received Cook's counterclaim. The trial court noted that the counterclaim had been filed via email several months earlier, before Thomas attempted to omit Cook from the arbitration proceedings. The court left it to the arbitrator to determine whether an email filing was appropriate, and ordered the parties back to arbitration.

In early July 2009, Thomas filed in state court a notice of motion to dismiss and nonsuit as to the claims against Ardyss, and a motion to dismiss her claims against Cook without prejudice.

The scheduled arbitration took place on July 23, 2009. Ardyss and Cook attended the arbitration proceeding; Thomas did not. The arbitrator issued his award and judgment in favor of Ardyss and Cook on August 28, 2009. The arbitrator concluded that Thomas owed Ardyss $48,009.35, plus reimbursement for costs and fees in the amount of $629.33. He also concluded that Thomas owed Cook $53,433.40, plus costs and fees reimbursement of $629.33. The arbitration award and judgment provided no recovery to Thomas.

On September 14, 2009, Ardyss and Cook filed a motion in state court to confirm the arbitration award. Thomas sub-

---

**2.** Thomas contends that she "removed" her claims against Ardyss to the United States District Court for the Southern District of Texas on April 27, 2009. The docket sheet for *Elizabeth Thomas v. Ardyss International*, Civil Action 4:09–CV–1366 in the United States District Court for the Southern District of Texas, indicates that Thomas's federal court complaint against Ardyss was docketed as having been filed on May 5, 2009. We take judicial notice of the docket sheet in Civil Action 4:09–CV–1366. *See* Tex.R. Evid. 201.

sequently filed a motion to vacate the award. On October 2, 2009, the trial court granted the motion filed by Ardyss and Cook; confirmed the arbitration award; and signed a final judgment incorporating the amounts awarded by the arbitrator.

On March 25, 2010, the United States District Court for the Southern District of Texas signed an order dismissing Thomas's complaint against Ardyss because any claims she wished to pursue are barred by res judicata and collateral estoppel in light of the trial court's October 2009 final judgment. The Fifth Circuit affirmed the federal district court's dismissal order. *Thomas v. Ardyss Int'l, Inc.*, 432 Fed. Appx. 361, 361 (5th Cir.2011) (per curiam) ("Thomas has failed to establish that the [federal] district court erred in dismissing her suit. Her collateral attacks on the state court judgment—which confirmed an arbitration award—and on that arbitration agreement and on the arbitration award as well, are barred by res judicata.") (citations omitted).[3]

## ANALYSIS

### I. Subject Matter Jurisdiction

■ As a threshold matter, we reject Thomas's argument that the trial court lacked subject matter jurisdiction to sign the October 2009 final judgment confirming the arbitration award because she dropped her state-court claims against Cook and Ardyss. Thomas's nonsuit did not divest the trial court of jurisdiction to sign a final judgment enforcing the arbitration award in favor of Cook and Ardyss under the Federal Arbitration Act.

Thomas argues that no subject matter jurisdiction existed in light of Texas Rule of Civil Procedure 162, entitled "Dismissal or Non–Suit." A dismissal under this rule

"shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk." Tex.R. Civ. P. 162. According to Thomas, Rule 162 did not preserve the trial court's subject matter jurisdiction after she nonsuited her claims against Cook and Ardyss because (1) Cook and Ardyss did not assert any counterclaims against her in the trial court; (2) Cook and Ardyss sought only to enforce arbitration as to Thomas; and (3) a request to enforce arbitration is not a "claim for affirmative relief" under Rule 162. Thomas's argument fails for at least four reasons.

First, the trial court had subject matter jurisdiction to enforce the arbitration award regardless of whether Thomas initially asserted causes of action against Cook and Ardyss in state court, and regardless of whether Thomas later nonsuited her causes of action.

■ When, as here, the parties expressly invoke the Federal Arbitration Act in the arbitration agreement at issue, the FAA governs and the parties are not required to establish that the transaction at issue affects interstate commerce. *See In re Choice Homes, Inc.*, 174 S.W.3d 408, 412 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding).

■ While the agreement at issue here expressly invokes the FAA, it does not specify a particular court in which confirmation of the arbitration decision must be pursued. Instead, the agreement states that the arbitrator's decision may be "reduced to a judgment in any court of competent jurisdiction." When the parties fail to specify a court in which a party may seek rendition of judgment on the arbitration award, section 9 of the FAA may

---

**3.** We conclude that citation of this unpublished opinion is appropriate under the circumstances of this case in light of 5th Cir. R. 47.5.4.

allow the parties to seek confirmation in either federal or state court. *Palisades Acquisition XVI, LLC v. Chatman*, 288 S.W.3d 552, 555 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("[A] party may seek confirmation of the arbitration award in federal court but is not required to do so.") (citing 9 U.S.C. § 9 (2009)).

■ This circumstance exists because the FAA itself does not confer subject matter jurisdiction on federal courts; a party may seek confirmation of an arbitration award in federal court only if there is an independent basis for federal jurisdiction. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 653 n. 5 (5th Cir.2000)). Therefore, "the federal act is enforced by both state and federal courts." *Chatman*, 288 S.W.3d at 555 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25–26 & n. 32, 103 S.Ct. 927); *see also Tanox v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250–52 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). "Because an independent basis for federal jurisdiction is often missing, enforcement of the Federal Act is left, in large part, to the state courts." *Chatman*, 288 S.W.3d at 556 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 & n. 32, 103 S.Ct. 927).

■ This court has recognized that subject matter jurisdiction to confirm an arbitration award under the FAA exists in Texas state court even when (1) no party previously asserted causes of action in the trial court before confirmation was requested; and (2) confirmation of the award resulting from an already-completed arbitration was the *only* action requested of the trial court. *See Credigy Receivables, Inc. v. Mahinay*, 288 S.W.3d 565, 567–68 (Tex.App.-Houston [14th Dist.] 2009, no

pet.); *Chatman*, 288 S.W.3d at 555–56; *cf.* Tex. Civ. Prac. & Rem.Code Ann. § 171.081 (Vernon 2011). It follows that state court subject matter jurisdiction to confirm an award under the FAA exists independently of the presence or absence of previously asserted causes of action. *See, e.g., Tanox*, 105 S.W.3d at 250–52; *Credigy Receivables*, 288 S.W.3d at 567–68; *Chatman*, 288 S.W.3d at 555–56. If the absence of previously asserted causes of action does not defeat a Texas court's subject matter jurisdiction to confirm an arbitration award under the FAA, then one party's unilateral decision to drop previously asserted causes of action cannot do so.

■ Second, a justiciable controversy existed when Cook and Ardyss sought enforcement of the arbitration provision and award.

■ Justiciability doctrines such as standing, ripeness, and mootness reflect the separation of powers doctrine and the prohibition against court-issued advisory opinions. *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex.1998) (citing Tex. Const. art. II, § 1; art. IV, §§ 1, 22; and art. V, § 8); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993) ("[W]e have construed our separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department.").

■ For a litigant to have standing, a controversy must exist between the parties at every stage of the legal proceedings. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001). "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson*, 971 S.W.2d at 443 (citing *Camarena v.*

*Tex. Emp't Comm'n,* 754 S.W.2d 149, 151 (Tex.1988)). "A case becomes moot when (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists, or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *Pantera Energy Co. v. R.R. Comm'n of Tex.,* 150 S.W.3d 466, 471 (Tex. App.-Austin 2004, no pet.); *see also United Servs. Life Ins. Co. v. Delaney,* 396 S.W.2d 855, 860 (Tex.1965) (Justiciability requires " 'a real controversy between the parties, which ... will be actually determined by the judicial declaration sought.' ") (quoting *Bd. of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 724 (1955)).

There is nothing contingent or hypothetical about a request to enforce the arbitration provision and confirm the arbitration award in favor of Cook and Ardyss. The parties' business dispute did not cease; nor did their dispute regarding their respective rights against one another under the Distribution Contract or with respect to arbitration. Confirmation of an arbitration award stating that Thomas owes $53,433.40 and costs to Cook, along with $48,009.35 and costs to Ardyss, has a very definite and practical legal effect on the parties' continuing dispute. Therefore, a justiciable controversy existed and continues to exist.

■ *Third,* dismissal for lack of subject matter jurisdiction is not warranted even if it is assumed for argument's sake that a motion to enforce an arbitration provision and the resulting award is not "a pending claim for affirmative relief" for purposes of Rule 162.

■ "After a nonsuit, a trial court retains jurisdiction to address collateral matters, such as motions for sanctions, even when such motions are filed after the nonsuit, as well as jurisdiction over any remaining counterclaims." *The Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 863 (Tex.2010); *see also id.* at 864 (a trial court retains authority "to address proper matters after a nonsuit is entered"). "When a court initially has jurisdiction to grant relief to resolve a live controversy between parties with proper standing, a party's filing [of] a nonsuit—while rendering the merits of the case moot—cannot deprive the court of its entire jurisdiction." *Id.* at 865. "Rather, the court must retain certain limited authority to dispose of the case following a nonsuit. . . ." *Id.* The scope of a trial court's "necessary authority" to address "collateral" and "proper" matters following nonsuit, *id.* at 863–64, depends in part on whether such authority advances "well-recognized policy goals" or "an express policy, as given by the Legislature." *Id.* at 864–65.

Recognizing the trial court's "necessary authority" to confirm the arbitration award at issue here as a "collateral" matter following nonsuit serves just such a purpose because enforcement of arbitration provisions and awards is a "well-recognized policy goal[ ]." *See, e.g., Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 898–99 (Tex.1995) ("Arbitration of disputes is strongly favored under federal and state law."); *cf.* Tex. Civ. Prac. & Rem.Code Ann. § 171.001 (Vernon 2011); *Nafta Traders, Inc. v. Quinn,* 339 S.W.3d 84, 96 (Tex.2011) ("[T]he purpose of the [Texas Arbitration Act] is to facilitate arbitration agreements, which have been enforceable in Texas by Constitution or statute since at least 1845."). This recognition also forecloses the possibility of an anomalous situation in which a strategic state court nonsuit prevents confirmation of an arbitration award under the FAA in a matter for which there is no independent basis for federal jurisdiction. For these reasons, the trial court's judgment confirming the

arbitration award falls within the trial court's "necessary authority" to address "collateral" and "proper" matters following Thomas's nonsuit of her causes of action against Cook and Ardyss. *Cf. Joachim*, 315 S.W.3d at 865 (trial court's "limited authority to dispose of the case following a nonsuit . . . includes the necessary authority to enter a dismissal with prejudice").

Fourth, confirming the existence of subject matter jurisdiction here comports with the Fifth Circuit's decision affording res judicata effect to the trial court's October 2009 final judgment enforcing the arbitration award. *See Thomas*, 432 Fed.Appx. at 361.

We therefore reject Thomas's contention that the nonsuit of her claims against Cook and Ardyss destroyed the trial court's subject matter jurisdiction to confirm an arbitration award under the FAA. A contrary holding would (1) reward procedural maneuvering aimed at circumventing an arbitration process that Thomas herself invoked; and (2) contravene the strong policy favoring arbitration. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (policy animating the FAA is "motivated, first and foremost, by a congressional desire to enforce agreements into which parties ha[ve] entered").[4]

## II. Thomas's Challenges to the Arbitration Award

Having rejected Thomas's threshold challenge to the trial court's subject matter jurisdiction, we now address her remaining arguments.

## A. Challenges to Ardyss's Award

Thomas contends that the trial court lacked authority to address confirmation of the arbitration award as to Ardyss after she filed her claims against Ardyss in federal court. The basis of this contention is not entirely clear from Thomas's *pro se* briefing. Insofar as this contention is a restatement of Thomas's argument that her nonsuit defeated subject matter jurisdiction, it fails for the reasons already discussed above. Insofar as this contention suggests that only a federal district court can entertain a motion to confirm an arbitration award under the FAA, it fails because state courts also have such authority. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 & n. 32, 103 S.Ct. 927; *Chatman*, 288 S.W.3d at 555–56. Thomas's argument also is untenable in light of the Fifth Circuit's affirmance of the federal district court's dismissal order in her federal suit against Ardyss, which afforded res judicata effect to the trial court's October 2009 final judgment affirming the arbitration award. *See Thomas*, 432 Fed. Appx. at 361.

## B. Challenges to Cook's Award

Thomas contends that the final judgment confirming the arbitration award as to Cook is erroneous because (1) Cook failed to establish the existence of an agreement to arbitrate between Cook and Thomas; (2) the award creates an unenforceable indemnity obligation between Thomas and Cook; (3) the arbitrator exceeded his authority; and (4) the award is

---

4. In light of our holding, we need not decide whether a request to enforce arbitration is a claim for relief independent of the plaintiff's causes of action for purposes of Rule 162. *Compare In re Riggs*, 315 S.W.3d 613, 615 (Tex.App.-Fort Worth 2010, orig. proceeding) (request to enforce arbitration is not a claim for affirmative relief under Rule 162), *with Joe Williamson Constr. Co. v. Raymondville* *Indep. Sch. Dist.*, 251 S.W.3d 800, 805–06 (Tex.App.-Corpus Christi 2008, no pet.) (arbitration claim survives filing of nonsuit because it is a claim for relief independent of the plaintiff's causes of action under Rule 162), *and Quanto Int'l Co. v. Lloyd*, 897 S.W.2d 482, 487 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding) (same).

improper under *Stolt–Nielsen, S.A. v. AnimalFeeds International Corp.,* —— U.S. ——, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).

■ We apply *de novo* review to a trial court's decision confirming an arbitration award, recognizing that the statutory grounds for vacatur under the FAA are limited. *See, e.g., Statewide Remodeling, Inc. v. Williams,* 244 S.W.3d 564, 567–68 (Tex.App.-Dallas 2008, no pet.); *see also Hall Street Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 582–89, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). Under the FAA, an arbitration award may be vacated when (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a) (2006).[5]

### 1. The agreement to arbitrate encompasses Thomas's disputes with Cook

■ A party seeking to enforce arbitration rights under the FAA must establish that (1) a valid arbitration agreement exists; and (2) the claims at issue fall within the agreement's scope. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding). Thomas contends that no arbitration agreement existed between Thomas and Cook. According to Thomas, (1) the arbitration provision applies only to disputes between Thomas and Ardyss; and (2) the arbitration clause no longer was germane to this litigation once she nonsuited her state court claims against Ardyss.

■ Thomas's contentions miss the mark. Ardyss submitted a copy of the Distribution Contract and the incorporated Ardyss Policies and Procedures Manual to the trial court. Thomas and Cook both are signatories to the Distribution Contract. Section 9.3 of the Policies and Procedures Manual incorporated into the Distribution Contract mandates arbitration for "[a]ny controversy or claim arising out of or relating to the Agreement, or the Breach thereof . . . ." This broad language (1) is part of the Distribution Contract signed by both Thomas and Cook, and (2) encompasses Thomas's dispute with Cook arising in connection with the Distribution Contract regardless of the status of Thomas's claims against Ardyss. These conclusions are confirmed by the substance of

**5.** Given the nature of Thomas's arguments, the language in the Policies and Procedures Manual, and the parties' exclusive invocation of the FAA in the manual, we need not address the circumstances under which parties can expand upon statutory grounds for vacating an arbitration award in a contract governed by both the Texas Arbitration Act and the FAA. *Compare Hall Street Assoc. L.L.C.,* 552 U.S. at 578, 128 S.Ct. 1396 (statutory vacatur and modification grounds under the FAA are exclusive and cannot be "supplemented by contract"), *with Nafta Traders, Inc.,* 339 S.W.3d at 98 (Texas Arbitration Act "permits parties to agree to expanded judicial review of arbitration awards."); *see also Nafta Traders, Inc.,* 339 S.W.3d at 101 ("[T]he FAA does not preempt enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the TAA."). The Policies and Procedures Manual contains no language purporting to authorize expanded judicial review. We also need not address the extent, if any, to which common law vacatur doctrines such as "manifest disregard" survive *Hall Street. See Stolt–Nielsen, S.A.,* 130 S.Ct. at 1768 & n. 3 (citing *Hall Street Assocs., L.L.C.,* 552 U.S. at 585, 128 S.Ct. 1396).

Thomas's allegations against Cook, which include allegations that Cook breached the Distribution Contract. These conclusions also are confirmed by Thomas's own demand for arbitration of her claims against Cook. *See Tanox*, 105 S.W.3d at 267

## 2. Indemnity is a merits-based argument that provides no basis for vacatur

Thomas contends that the arbitration award in favor of Cook should be vacated because the arbitrator improperly interpreted the Distribution Contract and the Policies and Procedures Manual to create an obligation under which Thomas as "co-applicant" must indemnify Cook as "applicant" for certain attorney's fees and costs. This contention provides no basis for vacatur under section 10(a) of the FAA because it focuses on the merits of the parties' contractual dispute rather than one of the enumerated statutory grounds for vacatur. "The court may not review the arbitrators' decision on the merits even if it is alleged that the decision is based on factual error or it misinterprets the parties' agreement." *Id.* at 250 (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001), and *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

## 3. The arbitrator did not exceed his authority

Thomas next argues that the arbitrator exceeded his authority by "deciding matters not properly before him."

In part, Thomas restates her arguments concerning the arbitrator's supposed recognition of an improper indemnity obligation. As discussed above, this argument provides no basis for vacatur because it challenges the arbitrator's resolution as to the merits of the parties' contract dispute. *See Tanox*, 105 S.W.3d at 250.

Thomas also contends that the arbitrator exceeded his authority by addressing all of the causes of action she asserted against Cook. We reject this contention because the trial court properly sent all of the causes of action Thomas asserted against Cook, contract and tort alike, to arbitration. *See id.* at 267 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927); *see also Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990) (arbitration should not be denied " 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue' " (quoting *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir.1984))).

## 4. *Stolt–Nielson* has no application in this context

Finally, Thomas argues that expansive review of the merits of the arbitration award is authorized under *Stolt–Nielsen, S.A.*, 130 S.Ct. at 1775. Thomas misplaces her reliance on this case.

*Stolt–Nielsen* held that an arbitration panel exceeded its power under section 10(a)(4) of the FAA when it imposed class-wide arbitration in the absence of an agreement authorizing class arbitration. *Id.* at 1775. In so doing, the Supreme Court stressed that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Id. Stolt–Nielsen* has no application here because Thomas's claims raise no issue involving the propriety of imposing class arbitration on parties

who have not agreed to authorize class arbitration.

## CONCLUSION

We affirm the trial court's final judgment confirming the arbitration award.

HEDGES, C.J., dissenting.

ADELE HEDGES, Chief Justice, dissenting.

In this appeal from the trial court's entry of an arbitration award as a final judgment, appellant Elizabeth Thomas challenges the trial court's jurisdiction to enter a judgment in favor of Ardyss International, Inc. ("Ardyss") and Dorothy Cook. Prior to arbitration, Thomas nonsuited her claims against Ardyss and Cook. At the time of her nonsuit, neither Ardyss nor Cook had filed any claims for affirmative relief in the trial court. I would thus conclude that the trial court lost jurisdiction to enter the arbitration award in this case because at the time it entered the award, there was no longer a case or controversy before it. Accordingly, I respectfully dissent.

The majority opinion adequately sets out the facts of this case. Further, I do not disagree with the majority's determination that a Texas court has subject matter jurisdiction to enforce arbitration awards under the Federal Arbitration Act. *See ante* at 388–89. Certainly, had Ardyss and Cook filed a petition seeking to compel arbitration or to enter the arbitration award, the trial court would have jurisdiction over such a claim. *Cf.* Tex. Civ. Prac. & Rem.Code Ann. § 171.081 (Vernon 2011) (conferring jurisdiction on trial courts to enforce arbitration agreements and render judgment on arbitra-

tion awards). However, I disagree with the majority's conclusion that, in the specific procedural posture of this case, which was filed by Thomas and in which she, as the "driver of the vehicle," chose to abandon her claims, the trial court retained jurisdiction to enter judgment. Simply put, I disagree with the majority's conclusion that the mere fact that a trial court theoretically has jurisdiction over a particular matter, means that it may necessarily exercise that jurisdiction in all circumstances. My disagreement with the majority centers on the following long-standing principal of law: "Subject matter jurisdiction requires that the party bringing the suit have standing, *that there be a live controversy between the parties,* and that the case be *justiciable.*"[1] *State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994) (emphasis added).

Although I disapprove of the tortuous procedural maneuvering undertaken by Thomas in this case, the trial court lost jurisdiction to enter the arbitration award as its judgment because Thomas nonsuited her claims against both defendants; thus, there was no longer any case or controversy before it. *See, e.g., Univ. of Tex. Med. Branch at Galveston v. Blackmon,* 195 S.W.3d 98, 101 (Tex.2006) (per curiam) (filing of nonsuit has the effect of "rendering the merits of the case moot"); *see also Gomez,* 891 S.W.2d at 245. A trial court may have jurisdiction over a particular matter, but if there is no case or controversy before it, it has nothing over which to *exercise* such jurisdiction.

Under the Texas Rules of Civil Procedure, a party has an absolute, unqualified right to take a nonsuit or dismiss a case before she introduces all of her evidence, as long as the defendant has not made a

---

1. As noted by the majority, justiciability requires " 'a real controversy between the parties, which ... will be actually determined by the judicial declaration sought.' " *See ante* at 390 (citing *United Servs. Life Ins. Co. v. Delaney,* 396 S.W.2d 855, 860 (Tex.1965)).

claim for affirmative relief. Tex.R. Civ. P. 162; *BHP Petroleum v. Millard,* 800 S.W.2d 838, 840 (Tex.1990). A claim for affirmative relief must allege a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or relief, even if the plaintiff abandons or is unable to establish her cause of action. *Univ. of Tex. Med. Branch at Galveston,* 195 S.W.3d at 100. A nonsuit is effective when it is filed; the only requirement is the mere filing of the motion with the clerk of court. *Id.*

Both Ardyss and Cook contend that their motion to compel arbitration constitutes a request for affirmative relief. Thus, they assert that, notwithstanding Thomas's nonsuit, the trial court retained jurisdiction over their claim for affirmative relief, *i.e.,* their motion to compel arbitration. But a request for arbitration of claims—like that made by Ardyss and Cook here—is not a cause of action inde-

pendent of the plaintiff's claim, nor one in which the defendants could recover benefits if the plaintiff abandons her cause of action; thus, it is not a claim for affirmative relief.[2] *In re Riggs,* 315 S.W.3d 613, 615 (Tex.App.-Fort Worth 2010, orig. proceeding) (citing *Gen. Land Office of State of Tex. v. OXY, U.S.A.,* 789 S.W.2d 569, 570 (Tex.1990)). "Arbitration is not a basis for recovery; it is, rather, the means by which recovery is obtained." *Gillman v. Davidson,* 934 S.W.2d 803, 805 (Tex. App.-Houston [1st Dist.] 1996, orig. proceeding) (en banc) (per curiam) (Hedges, J., dissenting).

Further, both Ardyss and Cook filed general denials pursuant to Texas Rule of Civil Procedure 92. They also asserted numerous affirmative defenses. But neither party requested any affirmative relief in their original answers or in pleadings filed prior to Thomas's nonsuits.[3] If a

**2.** As noted by the majority, two of our sister courts have held that an arbitration claim survives the filing of a nonsuit because it is a claim for relief independent of the plaintiff's causes of action. *See Joe Williamson Constr. Co. v. Raymondville Indep. Sch. Dist.,* 251 S.W.3d 800, 805–06 (Tex.App.-Corpus Christi 2008, no pet.); *Quanto Int'l Co. v. Lloyd,* 897 S.W.2d 482, 487 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding). I respectfully disagree with the reasoning expressed by our sister courts. *See Gen. Land Office,* 789 S.W.2d at 570 (stating that to qualify as claim for affirmative relief, defensive pleading must allege an independent cause of action on which he could recover even if plaintiff abandoned claim); *Gillman v. Davidson,* 934 S.W.2d 803, 804–05 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding) (en banc) (per curiam) (Hedges, J., dissenting) (concluding that arbitration is not a basis for recovery but a means by which recovery is obtained); *Quanto,* 897 S.W.2d at 488 (Hutson–Dunn, J., dissenting) ("Once Quanto abandoned its claims by filing a nonsuit, no other claims were on file to be resolved by arbitration."). Because neither *Quanto* nor *Joe Williamson* was reviewed by our high court, they are

persuasive, but not binding, on the other intermediate appellate courts of this state. *See Riggs,* 315 S.W.3d at 615 n. 2; *cf. In re Swift Transp. Co.,* 311 S.W.3d 484, 490 n. 2 (Tex. App.-El Paso 2009, orig. proceeding).

**3.** Both parties included in their conclusions and prayers a request for attorney's fees and costs. However, "[a] general prayer for relief will not support an award of attorney's fees because it is a request for affirmative relief that must be supported by the pleadings." *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.,* 287 S.W.3d 877, 884 (Tex.App.-Dallas 2009, no pet.). Further, a request for attorney's fees in the defendant's answer, not made in connection with an affirmative claim alleging that the opposing party has independently committed a breach of the party's contract, does not constitute a claim for affirmative relief. *See Leon Springs Gas Co. v. Rest. Equip. Leasing Co.,* 961 S.W.2d 574, 578 (Tex. App.-San Antonio 1997, no pet.). Neither Ardyss nor Cook alleged an independent claim for attorney's fees based on any breach of contract by Thomas. Thus there is no basis for the award of attorney's fees to them, and they had no other claim for affirmative relief

396

defendant does nothing more than resist a plaintiff's right to recover, the plaintiff has an absolute right to nonsuit. *Riggs,* 315 S.W.3d at 615. Thomas nonsuited her claims against Ardyss on July 7, 2009;[4] she dismissed Cook on July 10, 2009. As noted above, a nonsuit is effective on the date it is filed. *Univ. of Tex. Med. Branch at Galveston,* 195 S.W.3d at 100. Accordingly, at the time that trial court signed its final judgment in favor of Ardyss and Cook on October 2, 2009, nearly three months after both defendants had been nonsuited, there was no case left in which to enter judgment.

I would conclude that the trial court lost jurisdiction to sign the judgment when Thomas nonsuited her claims. Accordingly, I would vacate the trial court's judgment and dismiss this case.

pending that would preclude dismissal based on Thomas's nonsuit and dismissal motions. *See id.*

4. Thomas arguably nonsuited her claims against Ardyss months earlier when she filed an amended petition omitting Ardyss as a defendant on April 27, 2009. *See FKM P'ship, Ltd. v. Board of Regents of Univ. of Houston Sys.,* 255 S.W.3d 619, 634 (Tex.2008) (citing *Webb v. Jorns,* 488 S.W.2d 407, 409 (Tex.1972) and stating that an amended petition omitting claims acts as a voluntary dismissal of those claims).