**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed August 14, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00369-CV

---

### LEIF JAMES PUTNAM, Appellant

### V.

### MARY F. IVERSON and GREGORY W. ABBOTT, Appellees

---

**On Appeal from the County Court at Law Number 3
Galveston County, Texas
Trial Court Cause No. 12-FD-3216**

---

## M E M O R A N D U M    O P I N I O N

Appellant Leif James Putnam appeals the grant of the appellees' plea to the jurisdiction and the dismissal of his claims with prejudice. Because Putnam's claims against appellees Mary Iverson and Attorney General Gregory W. Abbott in their official capacities[1] are either moot or precluded by sovereign immunity, we

---

[1] Appellee Iverson was sued in her official capacity as an "Authorized Agent" and employee of the Office of the Texas Attorney General. Appellee Abbot was sued in his official

affirm the dismissal of those claims. Putnam did not lack standing to bring his claim for damages against appellee Mary Iverson in her individual capacity, however, and that claim is not moot. We therefore conclude the trial court erroneously granted the plea to the jurisdiction as to that claim. We reverse and remand for further proceedings on Putnam's claim against Iverson in her individual capacity.

## BACKGROUND

Putnam and Christine Hays divorced in 2008. The final divorce decree appointed Putnam and Hays as joint managing conservators of their daughter with Hays having the right to designate her residence; it also ordered Putnam to pay $500 per month in child support. The Office of the Attorney General sent Putnam a notice in February 2009 that it would provide monthly information to credit bureaus regarding his child support account. Putnam's daughter has resided with him continuously since May 2010, and Hays voluntarily relinquished care, custody, and control of the child to Putnam.

Putnam filed a petition to modify the parent-child relationship, and he and Hays signed an agreed final order in February 2012 in which Putnam was appointed the daughter's sole managing conservator. The final order did not address or resolve the amount, if any, of child support that may have accrued under the previous divorce decree prior to the resolution of the suit to modify the parent-child relationship.

In August 2012, appellee Iverson, an employee of the Special Collections Unit of the Office of the Attorney General, sent Texas First Bank a notice of lien that stated Putnam owed $4,037.50 in child support. After Texas First Bank froze

---

capacity as Attorney General of the State of Texas.

2

$4,037.50 in Putnam's account, the Collections Unit mailed Putnam a notice of lien.

Upon receiving the notice, Putnam went to the local unit of the Office of the Attorney General's Child Support Division and provided the 2012 agreed final order to demonstrate that he now had legal custody of his daughter. The local unit then advised the Collections Unit of the order. At that point, the Collections Unit determined that Putnam might still owe $1,000 for payments accrued in January and February 2012. The Collections Unit then authorized Texas First Bank to release all but $1,000 from the original lien, and it sought to contact Hays to determine whether she wanted them to pursue the remaining $1,000.

The Collections Unit also sent a report to certain credit bureaus regarding Putnam's child support obligations in September 2012. The report calculated arrearages based on payments ordered by the original divorce decree, counting unpaid payments accruing through February 22, 2012—the date the trial court signed the agreed final order in Putnam's suit to modify the parent-child relationship.

Hays informed the Collections Unit in October 2012 that she was not seeking the $1,000 at issue. The Collections Unit then authorized Texas First Bank to release the remaining $1,000 lien on October 14, 2012. Texas First Bank reported the only fee charged to Putnam while his account was frozen was a $50 processing fee, and that it returned no checks due to insufficient funds. According to Putnam, however, he was forced to borrow funds from "a non-traditional lender" to cover outstanding checks to his employees, and he paid $2,500 in interest on those funds.

In November 2012, the Collections Unit submitted requests to credit bureaus to delete records associated with the Office of the Attorney General regarding

3

Putnam.[2]  According to Putnam, however, the Collection Unit's September report to credit bureaus cost him approval for a $250,000 loan and damaged his credit.

Putnam filed this suit in November 2012.  He alleged that Iverson and Abbott deprived him of his Fifth Amendment, Fourteenth Amendment, and statutory rights to due process.  Under section 1983, Putnam sought actual damages against Iverson in her individual capacity, including $2,500 in interest paid on borrowed funds as well as compensation for mental anguish, damage to his credit reputation, and time lost from work.  *See* 42 U.S.C. § 1983 (2014).  Additionally, he sought temporary and permanent injunctions against both appellees in their official capacities to lift the lien on his account, report to the banks and credit bureaus involved that he was never in arrears, and remove the reports of his arrears from his credit reports. Putnam also sought injunctive relief requiring Abbott to comply with certain provisions of the Texas Family Code, the Texas Administrative Code, and the United States Code.  Alternatively, Putnam sought a declaratory judgment that Abbott is not complying with the codes.

Appellees filed a plea to the jurisdiction, contending that Putnam lacked standing, his claims were either moot or not ripe, and that sovereign immunity deprived the court of subject-matter jurisdiction.  The trial court granted appellees' plea to the jurisdiction and dismissed all of Putnam's claims with prejudice.

## ANALYSIS

On appeal, Putnam raises three issues:  (1) whether sovereign immunity precludes declaratory and injunctive relief against the State; (2) whether sovereign immunity precludes a suit against an employee of a State agency for damages and injunctive relief under section 1983; and (3) whether the trial court erred in

---

[2] One of the credit bureaus, Transunion, did not delete its records of Putnam until December 2012.

4

granting the plea to the jurisdiction. We address these issues together to determine whether the trial court erred in granting the plea to the jurisdiction.

## I. Standard of review

We review de novo a trial court's order granting a plea to the jurisdiction. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Where the jurisdictional challenge is based on the pleadings, as it is here, we "construe the pleadings liberally in favor of the plaintiff[] and look to the pleader['s] intent." *Id.* at 226. Unless the pleadings "affirmatively negate the existence of jurisdiction," the plea to the jurisdiction should not be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227; *see also Robinson v. Alieff Indep. Sch. Dist.*, 298 S.W.3d 321, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that where petition does not "affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency"). Dismissal is proper only "when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court." *Harris Cnty. v. Cypress Forest Pub. Util. Dist. of Harris Cnty.*, 50 S.W.3d 551, 553 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

## II. The trial court properly dismissed Putnam's claims against Iverson and Abbott in their official capacities.

### A. Section 1983 does not waive sovereign immunity.

Putnam contends that sovereign immunity does not apply to section 1983 claims and therefore the trial court had subject-matter jurisdiction over his claims. We disagree.

Sovereign immunity generally protects the State of Texas, its agencies, and its officers and employees acting in their official capacities from suits for damages brought in its own courts. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67

5

(1989); *see also Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). A plaintiff who sues the State or its equivalent must establish a waiver of or exception to sovereign immunity. *See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Otherwise, sovereign immunity from suit will defeat the trial court's subject-matter jurisdiction. *Id.*

The enactment of section 1983 did not "disregard the well-established immunity of a State from being sued without its consent." *Will*, 491 U.S. at 67; *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("[T]he State and its officials sued in their official capacities are immune from money damages sought in a Section 1983 claim unless they waive their immunity."). Nor has the Legislature generally waived sovereign immunity for any claim brought under section 1983. *In re K.G.S.*, 14-12-00673-CV, 2014 WL 801127, at *5 (Tex. App.—Houston [14th Dist.] Feb. 27, 2014, no pet.) (mem. op.).

Here, Iverson is a state employee and Abbott is a state officer. To the extent it otherwise applies, sovereign immunity extends to state officers and employees acting in their official capacities. *Fed. Sign*, 951 S.W.2d at 405; *Lazaro v. Univ. of Tex. Health Sci. Ctr.*, 830 S.W.2d 330, 332 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Because sovereign immunity is not waived simply because the claims are brought under section 1983, *see In re K.G.S.*, 2014 WL 801127, at *5, Putnam must establish that his claims against Iverson and Abbott in their official capacities fall within a waiver of or exception to sovereign immunity.

## B. Putnam's claims do not fit within the scope of the waiver contained in the Uniform Declaratory Judgments Act.

Putnam next contends that sovereign immunity does not bar his claims for declaratory relief under the Uniform Declaratory Judgments Act ("UDJA"). We hold Putnam's claims are not within the UDJA's waiver of sovereign immunity.

6

Although the UDJA does provide a waiver of sovereign immunity, the waiver is limited. *See Tex. Dep't. of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) ("[T]he UDJA waives sovereign immunity *in particular cases* . . . . (emphasis added)). The UDJA provides that a party "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008). The UDJA requires that plaintiffs challenging the constitutional validity of statutes join the relevant governmental entities, *id.* § 37.006(b), thereby waiving immunity for such claims. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity.").

Putnam is not challenging the constitutional validity of the various statutes he cites, however. Nor is he merely seeking a construction of the statutes. Instead, he seeks a declaration that the OAG has not complied with the statutes. Because Putnam seeks relief for the Collection Unit's actions under the statutes, he cannot rely on the limited waiver of immunity contained within the UDJA. *See Sefzik*, 355 S.W.3d at 622; *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, No. 14-13-00233-CV, 2014 WL 2583774, at *8 (Tex. App.—Houston [14th Dist.] June 10, 2014, pet. filed).

## C. Putnam's remaining claims against appellees in their official capacities are moot.

Relying on cases dealing with th*e ultra vires* exception to sovereign immunity, Putnam next contends that sovereign immunity does not bar his claims for injunctive relief because the appellees acted without legal authority. *See*

*Heinrich*, 284 S.W.3d at 372 ("To fall within thi*s ultra vires* exception, a suit must . . . allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."); *Montrose Mgmt. Dist.*, 2014 WL 2583774, at \*8. We need not reach the question whether Putnam's claims fall within the *ultra vires* exception, however, because Putnam's claims for injunctive relief are moot.

"The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy." *Robinson*, 298 S.W.3d at 324. For the trial court to have subject-matter jurisdiction, an actual controversy must exist between the parties. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). "An issue may become moot when a party seeks a ruling on some matter which, *when rendered*, would not have any practical legal effect on a then-existing controversy." *In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (emphasis added). If the issues presented are no longer "live" at some point before judgment, then the controversy becomes moot and the plaintiff loses standing to maintain his claims. *Williams*, 52 S.W.3d at 184; *see also Thomas v. Cook*, 350 S.W.3d 382, 389 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("For a litigant to have standing, a controversy must exist between the parties at every stage of the legal proceedings.").

Here, Putnam seeks an injunction requiring defendants to lift the lien on his account, report to the banks and credit bureaus involved that he was never in arrears, and remove the reports of his arrears from his credit reports. Putnam also seeks an injunction requiring compliance with various provisions of the Texas Family Code, the Texas Administrative Code, and the United States Code. Specifically, Putnam alleges that those provisions entitled him to a hearing before

the freezing of his bank accounts and proper notice before informing the credit bureaus of his alleged delinquencies, neither of which the Collections Unit provided.

Although a controversy may have existed when Putnam filed his petition, there is no continuing injury that injunctive relief could redress, and thus any injunctive relief would have no practical legal effect if awarded.[3] Regardless of whether the Collections Unit was required to take the actions Putnam seeks to compel, which we need not decide today, the Collections Unit has already performed those actions. All of the funds in Putnam's account with Texas First Bank have been released. The Collections Unit has also submitted requests to the relevant credit reporting agencies to delete records regarding Putnam's child support obligations.[4] In addition, an order requiring future compliance with applicable state or federal provisions would not redress Putnam's claimed injury of not receiving a hearing before the Collections Unit had his assets frozen. For these reasons, there is no live controversy regarding the injunctive relief Putnam seeks.

Putnam contends that even if his claims seeking injunctive relief are moot, they fall within an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." *E.g. Williams*, 52 S.W.3d at 184. This exception requires a plaintiff to "prove that: (1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Id.* It is the plaintiff's burden to prove both prongs of the

---

[3] *See In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d at 900; *cf. Williams*, 52 S.W.3d at 184 ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).

[4] According to the record, one of the agencies, Transunion, processed the request after Putnam filed his original petition but before the trial court granted the plea to the jurisdiction.

exception.  *See id.* at 184–85 (holding plaintiffs could not establish the second prong).

Here, Putnam asserts that the appellees' actions are capable of repetition, but he has neither alleged nor proved a reasonable expectation of their repetition. Putnam has not alleged that he is likely to again be subject to a lien for unpaid child support absent the preliminary hearing that he contends due process requires. *Cf. id.* (refusing to conclude a reasonable expectation existed that the plaintiffs would recidivate and again be sent to jail).

Instead, Putnam contends he need only show that the claims are "inherently transitory" and "that there likely exists a continuing class of persons suffering the same alleged harm as the named plaintiff." *Cf. Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012) (holding that in a class action, "the named plaintiff's individual interest can become moot without necessarily affecting the class's interest in how the suit turns out").  But this is not a class-action suit.  Moreover, Putnam has not alleged that "there was a widespread, systematic 'custom or practice'" of filing liens without a hearing, *see id.*; he simply notes the Collections Unit uses a standard form to file the lien.  We hold Putnam has not established that his claims fall within an exception to the mootness doctrine.

Because Putnam's claims against appellees in their official capacities are either moot or barred by sovereign immunity, we hold the trial court lacked subject-matter jurisdiction over those claims, and we affirm the portion of the trial court's order dismissing them.

### III. Putnam did not lack standing to pursue his claim for monetary damages against Iverson in her individual capacity.

Putnam also contends that the trial court should not have dismissed his section 1983 claim for damages against Iverson in her individual capacity.  We

agree.

Standing is a component of subject-matter jurisdiction, and we review its existence de novo. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Standing requires: (a) "a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 663 (Tex. 1996).

On appeal, the appellees contend dismissal was proper solely because Putnam lacked standing.[5] Appellees contend the $50 fee that Texas First Bank charged Putnam is "not a legally cognizable injury, because it was not incurred as a result of an actual constitutional violation, nor does it present a real controversy that would be determined by the judicial determination sought."[6]

Appellees' plea to the jurisdiction asserted Putnam did not suffer a legally distinct injury because, despite his interpretation that due process required a hearing, he was not constitutionally entitled to a hearing in this context. The purpose of a plea to the jurisdiction, however, is "to defeat a cause of action without regard to whether the claims asserted have merit . . . not to force a plaintiff to preview its case on the merits." *Sw. Bell Tel., L.P. v. Harris Cnty.*, 267 S.W.3d

---

[5] Although the trial court's order does not identify the ground on which it relied in granting the plea to the jurisdiction, appellees contend analysis of whether Putnam's claims against Iverson in her individual capacity are barred by sovereign immunity would constitute an advisory opinion, because "those claims were not dismissed on the basis of sovereign immunity." We interpret this statement to mean appellees have not asserted that sovereign immunity bars claims against state officials in their individual capacities. *Cf. Minix v. Gonzales*, 162 S.W.3d 635, 639 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[6] Appellees have not separately addressed Putnam's allegations that the filing of the lien caused him to pay $2,500 in "loan-shark interests rates," suffer mental anguish, and lose time from work.

11

490, 494 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Robinson*, 298 S.W.3d at 324 ("In deciding a plea to the jurisdiction, we may not weigh the merits of the plaintiff's claim . . . ."). The questions whether Putnam was entitled to a hearing, and whether depriving him of one violated due process, address Putnam's entitlement to the remedy he seeks—not the trial court's adjudicatory authority. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000) ("'The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.'" (quoting 21 C.J.S. *Courts* § 16, at 23 (1990))). Accordingly, those questions may not be decided on a plea to the jurisdiction, and we express no view on them here.

Appellees also assert that Putnam "no longer faces the conduct about which he complains," so his claims are moot. Although we have held above that Putnam's claims for injunctive relief are moot, there is no evidence in the record that Putnam has been compensated for the $50 fee, the alleged "extortionate" costs and fees, or his other claimed damages. Thus, his claims for damages are not moot. *See Williams*, 52 S.W.3d at 185. Accordingly, we hold the trial court erred in dismissing Putnam's section 1983 claim for damages against Iverson in her individual capacity.

## CONCLUSION

Because the trial court properly dismissed Putnam's claims for injunctive and declaratory relief against both Iverson and Abbott in their official capacities, we affirm the trial court's dismissal of those claims. We reverse the court's dismissal of Putnam's section 1983 claim for damages against Iverson in her individual capacity and remand the case for further proceedings.


/s/                  J. Brett Busby
                               Justice

Panel consists of Justices McCally, Busby, and Donovan.